# United States Court of Appeals
## For the First Circuit

No. 98-1910

JAMIR SANTIAGO CLEMENTE,

Plaintiff, Appellant,

v.

EXECUTIVE AIRLINES, INC.,
d/b/a American Eagle,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Perez-Gimenez, U.S. District Judge]

Before

Lynch, Circuit Judge,

Campbell, Senior Circuit Judge,

and O'Toole[*], District Judge.

Enrique J. Mendoza-Méndez with whom Mendoza & Baco was on brief for appellant.
Carmencita Velázquez-Márquez with whom Anita Montaner Sevillano and McConnell Valdés were on brief for appellee.

[*]Of the District of Massachusetts, sitting by designation.

May 24, 2000

**CAMPBELL, <u>Senior Circuit Judge</u>.** Plaintiff-appellant Jamir Santiago Clemente brought this disability discrimination action against her employer, defendant-appellee Executive Airlines, Inc., d/b/a American Eagle ("American Eagle"). The district court allowed American Eagle's motion for summary judgment on the ground that Santiago failed to adduce sufficient evidence that she was disabled within the meaning of the Americans with Disabilities Act, 42 U.S.C. § 12101 <u>et seq.</u> ("the ADA"). We affirm.

**I.**

We describe the relevant facts appearing in the summary judgment record in the light most favorable to the appellant. <u>See</u> <u>New York State Dairy Foods, Inc.</u> v. <u>Northeast Dairy Compact Comm'n</u>, 198 F.3d 1, 3 (1st Cir. 1999). Beginning December 1, 1991, Santiago was employed by American Eagle. She became a flight attendant on November 30, 1994. On August 30, 1995, on a flight sequence to St. Croix, Santiago complained of ear pain and requested to be relieved from her schedule upon arrival in San Juan.

-2-

The next day, Santiago awoke with bleeding and pain in her ear. That day, her private physician diagnosed her with otitis media (ear infection) and ordered her to rest. Santiago went on sick leave from American Eagle. When her pain persisted, Santiago sought emergency room care and then treatment from Dr. Germán González, an ear, nose and throat specialist. Dr. González diagnosed otitis media and sinusitis (sinus infection). Upon his recommendation, on October 10, 1995, Santiago reported her ear problem as a work-related injury to the State Insurance Fund ("SIF").

American Eagle permitted Santiago to take sick leave from August 31, 1995, to early November, 1995. Following her sick leave, Santiago returned to work with no medical restrictions. She continued to experience pain, however, particularly during non-pressurized cabin flights. On November 15, 1995, Santiago underwent an audiogram, a subjective hearing test. This test indicated that she had a moderate hearing loss in the right ear, but no hearing loss in the left ear. In subjective hearing tests, the results depend upon the individual's verbal responses as to her perceptions of her ability or inability to hear certain sounds. In objective hearing tests, a physician determines hearing ability by

observing the brain's response to sound; self-reporting is not a factor.

On December 5, 1995, Santiago sought additional treatment from the SIF physician, Dr. Pichardo, who diagnosed Santiago with acoustic trauma in her right ear and stated that Santiago should fly only in planes with pressurized cabins in order to "minimize the effect of pressure" in that ear. Santiago gave Dr. Pichardo's recommendation to her supervisor, Michelle Fajardo. Fajardo told her that the airline could not assign her to work solely in pressurized cabins because the relevant collective bargaining agreement precluded American Eagle from altering Santiago's flight sequences. Fajardo stated that Santiago had two options: she could continue flying without the requested accommodation, or she could resign. American Eagle did not offer any other options at this time. Other flight attendants who had requested accommodations due to ear problems had been offered ground positions.

Following this conversation, Santiago continued to fly on planes both with pressurized and unpressurized cabins. On March 1, 1996, Dr. González noted that Santiago had recovered from her otitis and sinusitis, but found that she had damage to her inner ear, resulting in auditory loss in the right ear and

other symptoms. He recommended that she not fly until her condition improved.

On Santiago's own initiative, she ceased flying on March 19, 1996. A few days later, American Eagle referred her to a company-appointed physician, Dr. Thomas Murphy. Dr. Murphy stated that Santiago may have a fistula (an abnormal passageway) producing chronic ear problems and that she "may not be able to fly again." He ordered that Santiago be temporarily removed from flying duties until her condition stabilized. Subjective hearing tests in or around April, 1996, reflected continued hearing loss in Santiago's right ear.

Around this time, American Eagle began searching for a ground position for Santiago. Accordingly, in early April, 1996, Santiago was transferred to a temporary receptionist position at the same salary level. In May, 1996, she became a payroll clerk; in June, 1997, Santiago took a permanent position as operational manager, earning a higher salary than she did as a flight attendant. On or around June 19, 1996, a coworker complained about Santiago's "tone of voice," i.e. that she was speaking too loudly. Ana Torres, the head of personnel, suggested that Santiago be referred to a psychologist because she "had a problem of adaptation" to her hearing loss.

On May 21, 1996, Dr. González performed an exploratory tympanotomy and closed a fistula. In July, 1996, he recommended that Santiago use a hearing aid and that she avoid "constant airplane flights." Additional subjective hearing tests around that time reflected continued hearing loss in her right ear. Santiago did not start using the hearing aid until sometime after August 29, 1996.

On February 25, 1997, Santiago filed a complaint alleging that her employer's conduct violated the ADA, 42 U.S.C. § 12101 et seq., and Act Number 44 of July 2, 1985, P.R. Laws Ann. tit. 1, § 501 (1982 & Supp. 1992) ("Puerto Rico Disabilities Law"). In March, 1997, further subjective hearing tests indicated that Santiago had moderate to severe hearing loss in her right ear, while the left ear was normal.

In November, 1997, Santiago underwent objective hearing tests for the first time, performed by otologist Dr. Fred Telischi. These tests suggested that her hearing was within the normal range in both ears. On January 21, 1998, she had additional objective hearing tests performed at the request of her expert witness, Dr. José Arsuaga, an ear, nose and throat specialist. After the tests, Dr. Arsuaga opined that Santiago's hearing capacity was within normal limits in both ears. He concluded that while Santiago had suffered aerotitis (damage to

the middle ear caused by ambient pressure changes) and possible damage to the inner ear in 1995, she had recovered. Both Telischi and Arsuaga stated that Santiago may have exaggerated her responses in the earlier subjective audiology tests.

On February 17, 1998, Santiago moved for partial summary judgment on the issue of liability, contending that American Eagle had failed to timely provide a reasonable accommodation and that this failure caused her hearing loss. American Eagle opposed Santiago's motion and cross-moved for summary judgment. In its motion, American Eagle did not dispute the facts presented by Santiago but set forth additional facts, some of which concerned the temporary nature of her hearing loss. Santiago opposed American Eagle's cross-motion, contending that some of the additional facts were disputed.[1]

On June 9, 1998, in a published opinion, the district court allowed American Eagle's motion for summary judgment. See Santiago Clemente v. Executive Airlines, 7 F. Supp.2d 114 (D.P.R. 1998). The district court determined that Santiago did not set forth sufficient evidence of a substantial limitation to a major life activity. Hence, it concluded, she failed to prove

---

[1]To the extent that Santiago's opposition to American Eagle's motion for summary judgment indicated factual controversies, none are material to our disposition of this appeal.

an element of her prima facie case under the ADA: that her impairment amounted to a disability. The court also dismissed Santiago's supplemental state law claim, without prejudice, for lack of jurisdiction.

## II.

This Court reviews orders for summary judgment de novo, construing the record in the light most favorable to the nonmovant and resolving all reasonable inferences in that party's favor. See Houlton Citizens' Coalition v. Town of Houlton, 175 F.3d 178, 184 (1st Cir. 1999). Santiago contends that the district court did not properly construe the record in her favor, leading it erroneously to the conclusion that her condition did not constitute a disability.

The ADA prohibits an employer from discriminating against a qualified individual on the basis of a disability. See 42 U.S.C. § 12112(a). Here, Santiago alleges that American Eagle failed reasonably to accommodate her alleged ear-related disability. To survive American Eagle's motion for summary judgment, she must furnish "significantly probative evidence" that, inter alia, she is a qualified individual with a disability within the meaning of the ADA and that, despite knowing of the disability, her employer did not reasonably accommodate it. See Higgins v. New Balance Athletic Shoe, Inc.,

194 F.3d 252, 264 (1st Cir. 1999); see also 42 U.S.C. § 12112(b)(5)(A) (under ADA, the term "discriminate" may include not making reasonable accommodations to known physical or mental limitations of otherwise qualified individual with disability).

Like the district court, we conclude that Santiago's ADA case founders for failure to show that she had a disability as that term has been construed for purposes of the statute. Not all physical impairments rise to the level of disability under the ADA. See Albertsons, Inc. v. Kirkingburg, 119 S. Ct. 2162, 2168-69 (1999). Rather, the ADA defines the term "disability" as (A) "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual," (B) "a record of such an impairment," or (C) "being regarded as having such an impairment." 42 U.S.C. § 12102(2)(A)-(C).

A.    Substantially limiting impairment

In contending that she qualifies for ADA protection under 42 U.S.C. § 12102(2)(A), Santiago argues that her ear problems, principally the temporary right-ear hearing loss, substantially limited her major life activities of hearing, speaking, and working. Whether an impairment substantially limits one or more of an individual's major life activities is

determined in a three-step analysis.  See Bragdon v. Abbott, 524
U.S. 624, 631 (1998).  First, we consider whether Santiago's ear
problems constituted a physical impairment.  Second, we identify
the life activities upon which Santiago relies -- hearing,
speaking, and working -- and determine whether they constitute
major life activities under the ADA.   Third, tying the two
statutory phrases together, we ask whether the impairment
substantially limited one or more of the activities found to
amount to major life activities.  See id.

Read most favorably to Santiago, her evidence satisfies
the first two requirements of this analysis.  Her ear problems
were an impairment under the relevant EEOC definitions, being a
"physiological disorder or condition" affecting "special sense
organs."   See 29 C.F.R. § 1630.2(h)(1).   And the three
activities claimed to have been impaired -- hearing, speaking,
and working -- are all explicitly recognized as "major life
activities" under EEOC regulations.  See id. § 1630.2(i); see
also Colwell v. Suffolk County Police Dept., 158 F.3d 635, 642
(2d Cir. 1998), cert. denied, 526 U.S. 1018 (1999) (activities
listed in EEOC regulations are treated as major life activities

per se, rather than as major life activities only to the extent that they are shown to affect a particular ADA plaintiff).[2]

Where Santiago's claim encounters difficulty is at the third and final step of the analysis: her ear impairment was not shown to have substantially interfered with her performance of any of the identified major life activities. EEOC regulations define "substantially limits" as:

> (i) Unable to perform a major life activity that the average person in the general population can perform; or
>
> (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1). Among the relevant considerations are (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; (3) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment. See id. § 1630.2(j)(2).

### 1. Hearing and speaking

---

[2]We look to the well-reasoned views of the agencies implementing a statute, which "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." Bragdon, 524 U.S. at 642 (quoting Skidmore v. Swift & Co., 323 U.S. 134, 139-140 (1944)).

-11-

Santiago has not provided evidence sufficient to demonstrate that her claimed impairment substantially interfered with hearing or speaking. The Supreme Court recently emphasized that a court must determine on a case-by-case basis whether an individual has offered sufficient evidence "that the extent of the limitation in terms of [her] own experience . . . is substantial." Albertsons, 119 S. Ct. at 2169. As the EEOC regulations instruct, we examine the evidence of the duration, severity, and long-term impact of Santiago's alleged limitations. See 29 C.F.R. § 1630.2(j)(2).

As for duration, it is undisputed that Santiago's auditory problems were temporary and that her hearing is now normal. Beginning in November, 1995, Santiago underwent subjective tests. These reflected a hearing loss in her right ear.[3] By November, 1997, objective tests showed that her hearing was normal in both ears and there is no evidence of hearing loss beyond that time. Hence, a reasonable jury could conclude that, at most, Santiago experienced moderate to severe hearing loss in one ear for approximately two years.

---

[3]The pain and dizziness Santiago experienced from flying in unpressurized cabins are not the basis for her ADA claim, which focuses on her hearing loss.

It is true, as the district court acknowledged, that the temporary nature of an impairment does not necessarily preclude it from constituting a disability under the ADA:

> Although short-term, temporary restrictions generally are not substantially limiting, an impairment does not necessarily have to be permanent to rise to the level of a disability. Some conditions may be long-term or potentially long-term, in that their duration is indefinite and unknowable or is expected to be at least several months. Such conditions, if severe, may constitute disabilities.

Katz v. City Metal Co., Inc., 87 F.3d 26, 31 (1st Cir. 1996) (citing 2 EEOC Compliance Manual, Interpretations (CCH) § 902.4, ¶ 6884, p. 5319 (1995)) (emphasis supplied).

It is debatable whether Santiago's treating physicians considered her ear-related impairment to be permanent, long-term or potentially long-term. For example, in March, 1996, Dr. González recommended that Santiago not fly "until" her condition improved, and Dr. Murphy stated that Santiago should be temporarily removed from flying duties until her condition stabilized.

Even assuming that Santiago's impairment was potentially long-term, however, there is no evidence that the temporary diminution in her right-ear hearing had a severe impact on her functional ability to hear. See 29 C.F.R. § 1630.2(j)(2)(i). The record at most supports a possible finding

-13-

that Santiago's hearing loss was moderate to severe in one ear only. An audiological evaluation summary dated March 3, 1997, states that "Counseling [was] provided relative to impairments associated with the unilateral hearing loss, namely, the inability to perform sound localization, and difficulty with speech discrimination in noisy environments." No evidence, however, identifies the overall functional degree of loss suffered by Santiago. See Albertsons, 119 S. Ct. at 2169 (fact that plaintiff suffered monocular vision was, without more, insufficient to establish disability). Nor is there evidence that the hearing loss actually affected Santiago's activities in some specific way. See Still v. Freeport-McMoran, Inc., 120 F.3d 50, 52 (5th Cir. 1997) (where plaintiff offered no evidence that he is unable to engage in any usual activity because of blindness in one eye, major life activity of seeing is not "substantially limited"). Given her normal hearing in one ear and the existence of some residual hearing in the other, there is insufficient basis, without more, for assuming a substantial loss in overall hearing ability. In short, Santiago has not adduced sufficient evidence that, compared to the average person in the general population, she was significantly restricted in her hearing. See Albertsons, 119 S. Ct. at 2168-69; 29 C.F.R. § 1630.2(j)(1).

The same is even more true with regard to the major life activity of speaking. The record contains at most some evidence suggesting that Santiago's tone of voice may have been affected by her impairment. This is inadequate, without more and in light of the record discussed supra, for a reasonable jury to conclude that her impairment substantially limited her speaking. See Davidson v. Midelfort Clinic, Ltd., 133 F.3d 499, 507 (7th Cir. 1998) (where there was no evidence that disorder affected plaintiff's ability to communicate generally, there was no substantial interference with her ability to speak). Moreover, Santiago points to no evidence of the actual or expected long-term impact of her temporary hearing impairment. See 29 C.F.R. § 1630.2(j)(2)(iii).

In sum, under the fact-specific analysis of the duration, severity, and long-term impact of Santiago's hearing impairment mandated by the ADA, see Katz, 87 F.3d at 32, we conclude that it cannot be reasonably construed to have substantially limited her major life activities of hearing and speaking.[4]

---

[4]Santiago contends that American Eagle's denial of her request not to fly in unpressurized cabins caused her hearing loss. Assuming that this contention is true, it reads the ADA's protections backwards. Santiago's present claim of disability focuses on her hearing loss. She does not contend that she had that disability at the time of her request, nor is it readily apparent that the pain and other side effects she then reported

2.   Working

Similarly, Santiago did not adduce sufficient evidence that her impairment substantially limited the major life activity of working. EEOC regulations provide that this activity is substantially limited only where an individual is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities."  29 C.F.R. § 1630.2(j)(3)(i) (1998).  The EEOC further identifies several factors that courts should consider when determining whether an individual is substantially limited in working, including "the number and types of jobs utilizing similar training, knowledge, skills or abilities, within [the] geographical area [reasonably accessible to the individual], from which the individual is also disqualified." Id. § 1630.2(j)(3)(ii)(B).

Hence, to be substantially limited in the major life activity of working, Santiago must be precluded from more than a particular job.  See Murphy v. United Parcel Servs., Inc., 119 S. Ct. 2133, 2138 (1999); see also 29 C.F.R. § 1630.2(j)(3)(i).

from unpressurized flight were themselves disabilities within the meaning of the ADA.  See note 3, supra.  An employer's duty to accommodate relates only to existing disabilities.  See Soileau v. Guilford of Maine, Inc., 105 F.3d 12, 15 (1st Cir. 1997).

Her temporary hearing loss, however, was not shown to have interfered at all in carrying out the duties of a flight attendant. Even if her impairment were defined more broadly -- i.e., as a condition precluding flight on non-pressurized airplanes -- there is no evidence of how many jobs call for this ability, or that she was precluded from any class of jobs. Moreover, the record indicates that Santiago was qualified for various ground positions at American Eagle, including receptionist, payroll clerk, and operational manager. Indeed, Santiago has successfully continued her employment at American Eagle, and earns a higher salary than she did as a flight attendant. As a matter of law, therefore, Santiago did not establish that her impairment substantially limited her ability to work. See Murphy, 119 S. Ct. at 2138-39.

Without evidence that Santiago's impairment substantially limited any of the three claimed major life activities, the district court correctly concluded that her claim could not survive summary judgment. "Absent a disability . . . no obligations are triggered for the employer." Soileau, 105 F.3d at 15.[5]

---

[5]In Sutton v. United Air Lines, Inc., 527 U.S. 471, 119 S. Ct. 2139 (1999), the Supreme Court held that corrective and mitigating measures must be considered in determining whether an individual is disabled under the ADA. 119 S. Ct. at 2146. Hence, courts must examine how an impairment affects a

B.    Having a record of such impairment

Santiago also has not adduced sufficient evidence to satisfy subpart (B) of 42 U.S.C. § 12102(2), in which a disability is defined as "a record of such an impairment." To have a record of such an impairment, a plaintiff must have a history of, or been misclassified as having, an impairment that substantially limited a major life activity. See 29 C.F.R. § 1630.2(k).

The regulations make clear that the recorded impairment must be one that substantially limited a major life activity. See id.; Sorensen v. University of Utah Hosp., 194 F.3d 1084, 1087 (10th Cir. 1999); Hilburn v. Murata Elec. N. Am., Inc., 181 F.3d 1220, 1229 (11th Cir. 1999). Santiago points to no evidence of either a history or misdiagnosis of such an impairment. Thus, her claim cannot proceed under subpart (B).

C.    "Regarded as having such an impairment"

Santiago additionally contends that she is entitled to relief under the ADA because American Eagle regarded her as

---

plaintiff's life activities in light of her attempts to correct her impairment, including hearing aids. See id.; Higgins, 194 F.3d at 265; Ivy v. Jones, 192 F.3d 514, 516 (5th Cir. 1999). Here, the district court did not have the benefit of the Sutton opinion at the time it decided this case. Because we conclude that Santiago's impairment did not rise to the level of a disability even in its unmitigated state, there is no need to remand this issue for further consideration by the district court in light of Sutton.

-18-

having a substantially limiting impairment. EEOC regulations define "is regarded as having such an impairment" as:

> (1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;
>
> (2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or
>
> (3) Has [no physical or mental impairment within the meaning of the regulations] but is treated by a covered entity as having a substantially limiting impairment.

29 C.F.R. § 1630.2(l).

In support of her argument, Santiago points to the following evidence: the company-appointed doctor's diagnosis of a possible fistula and recommendation that she not fly until her condition stabilized; the head of personnel's suggestion that she see a psychologist because she "had a problem of adaptation"; and her use of a hearing aid. Dr. Murphy's statements do not, however, support a conclusion that Santiago was treated by American Eagle as if she had a substantially limiting impairment. Dr. Murphy simply stated that Santiago "may have" a fistula, that she "may" not be able to fly again, and that Santiago should be temporarily removed from flying duties until her condition stabilized. His comments concerned Santiago's ability to fly in light of her symptoms. They did

-19-

not concern her ability to perform major life activities, i.e., to hear, to speak, or to work in a class or range of jobs as discussed supra.

Moreover, the record indicates that the comment about Santiago's problem of "adaptation" and her use of a hearing aid did not occur until well after she had been transferred to a permanent ground position. As discussed above, the claimed disability must precede or at least be immediately related to the request for accommodation. See note 4, supra. Santiago cannot complain that she was treated by American Eagle as having a substantially limiting impairment after having received the accommodation she sought.

In sum, Santiago has not set forth sufficient evidence of the existence of a disability under any of the criteria prescribed by the statute and regulations. Because American Eagle had no legal duty to Santiago under the ADA, we need not consider any of the further issues raised by the parties.

Affirmed.