Angel **SALAMO MARTINEZ,**
**Plaintiff(s),**

v.

**CELULARES TELEFONICA, INC.**
**et als., Defendant(s).**

**Civil No. 02–1281 (JAG).**

United States District Court,
D. Puerto Rico.

July 17, 2003.

---

Johnny Correa–Noa, San Juan, PR, for plaintiff.

Carl E. Schuster, Lourdes C. Hernandez–Venegas, Schuster Usera Aguilo & Santiago, San Juan, PR, for defendant.

## OPINION AND ORDER

GARCIA GREGORY, District Judge.

Plaintiff Angel Salamo Martinez ("Salamo") sued his former employer, Celulares Telefonica, Inc. ("CTI"), and his supervisor, Viviannette Menendez ("Menendez"), alleging that they discriminated against him based on his age and disability. He brings claims under the American with Disabilities Act of 1990 ("ADA"), as

amended, 42 U.S.C. § 1210 *et seq.*, Title VII of the Civil Rights Act of 1991, 42 U.S.C. § 2000e–5, and 42 U.S.C. § 1981(a). Salamo also invokes this Court's pendent jurisdiction to entertain claims under Law 100 of June 30, 1950, as amended, 29 L.P.R.A. § 146 *et seq.*, Law 80 of May 30, 1976, 29 L.P.R.A. § 185 *et seq.*, and Article 1802 of the Civil Code of Puerto Rico. On January 24, 2003, CTI moved for summary judgment (Docket No. 15). Plaintiff filed an opposition (Docket No. 21) and defendants filed a reply (Docket No. 26). For the reasons stated below, the Court GRANTS the summary judgment motion.

### FACTUAL BACKGROUND

In 1996, Salamo began working for CTI as a sales consultant. Salamo's primary responsibilities included selling cellular products and services to CTI customers, entering the customer information into CTI's computerized database and going through a credit verification procedure. The credit verification procedure determined whether a customer was required to leave a deposit in order to purchase the desired product. CTI's administration also pre-established minimum sales goals which the sales consultants were expected to meet. In addition to their salaries, the sales consultants received a commission for meeting these sales goals. Either an independent CTI branch, known as the "UCB," or the Trans Union credit verification system, would perform the credit verification process, depending on whether the sale was pro-active or in-store. For in-store sales, the sales consultants had to enter the customer's information into a database which automatically determined the deposit amount that the customer was required to pay. During proactive sales, the sales consultants had to call the *UCB employees,* who then entered the customer deposit information using the "manual" option. The sales consultants were not authorized to use the "manual" option.

During Salamo's employment with CTI, there was a glitch in the system and sales consultants had access to the "manual" option in the credit verification screen. Upon discovering that several sales consultants were using the "manual" option in order to bypass the credit verification process and secure sales, CTI blocked the option. During the glitch, however, several sales consultants manually entered a lower deposit in order to secure sales and therefore increase their commissions.

At the end of April 2000, Menendez, CTI's Caguas store supervisor, instructed all cashiers in the store that a UCB credit verification was required before securing a sale. She also indicated that *only* the UCB department had the authorization to reduce the deposits or relieve the customers from paying the deposits. On May 31, 2000, Gladys Leon ("Leon"), a Caguas store cashier, told Menendez that Salamo had attempted to bypass the credit verification process, stating that Menendez had authorized him to waive his customers' deposit requirement. Menendez instructed Leon not to process any of Salamo's contracts, informed Salamo about Leon's allegations, and asked that he turn over all his contracts for May 2000 in order to conduct an investigation. Salamo submitted the requested contracts on June 3, 2000 and two days later, he contacted CTI's Employee Assistance Program ("EAP") after allegedly suffering from an anxiety attack. Salamo visited a psychologist on June 6, 2000, who referred him to an outside treatment facility known as Clinica Interdisciplinaria de Psiquiatria Avanzada ("CIPA"). Salamo was partially hospitalized at CIPA for twenty days, from June 7, 2000 to July 16, 2000. EAP notified Menendez that Salamo would be on sick leave attending the program, however, no additional information regarding his condition was discussed.

CIPA diagnosed Salamo with major depression. Upon his release, however, Dr. Caban ("Caban"), Salamo's treating physician at CIPA, stated that he was completely normal and capable of returning to work. Caban's sole recommendation was that Salamo be granted a transfer closer to his home in order to prevent additional stress.

Meanwhile, upon review of Salamo's contracts, Menendez discovered that several of Salamo's contracts for which the UCB required deposits were processed without a deposit. Based on the investigation and his violation of several company rules, CTI decided to terminate Salamo's employment. Salamo returned to work on July 18, 2000 and submitted Caban's recommendation to Menendez. On July 19, 2000, however, Menendez handed the letter of termination to Salamo in the presence of Edgardo Figueroa, interim District Manager, and Wilfredo Leon, union delegate.

## SUMMARY JUDGMENT STANDARD

The summary judgment standard, governed by Fed.R.Civ.P.56, states that the court should grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. R. 56(c); *see Santiago–Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 52 (1st Cir.2000). The Supreme Court in *Celotex Corp. v. Catrett* held that the party seeking summary judgment, bears the initial burden demonstrating that no genuine issue as to a material fact exists. 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A contested fact is "material" when it has the potential to change the outcome of the case. *Vega–Rodriguez v. Puerto Rico Tel. Co.,* 110 F.3d 174, 178 (1st Cir.1997). There is no genuine issue for trial when the record, taken as a whole, could not lead a trier if fact to find for the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

In order to defeat a summary judgment motion, the non-moving party must "present definite, competent evidence to rebut the motion." *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 581 (1st Cir. 1994). The non-moving party must show that a trial-worthy issue exists and must point to specific facts that demonstrate the existence of an authentic dispute. *Mesnick v. General Elec. Co.,* 950 F.2d 816, 822 (1st Cir.1991). "The mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Moreover, inferences drawn from the underlying facts will be viewed in the light most favorable to the non-moving party. *Id.* at 255. Nonetheless, the Court must never "weigh the evidence and determine the truth of the matter," *Lipsett v. University of P.R.,* 864 F.2d 881, 895 (1st Cir.1988)(quoting *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505), and "[n]o credibility assessment may be resolved in favor of the party seeking summary judgment." *Woodman v. Haemonetics Corp.,* 51 F.3d 1087, 1091 (1st Cir.1995). The Court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990). Summary judgment should not be granted if the court determines that there is a genuine factual issue whose resolution will affect the outcome of the trial. *Lipsett,* 864 F.2d at 895.

CTI seeks summary judgment on the grounds that (1) Salamo was not a "qualified individual" with a disability under the

ADA and his disability discrimination and retaliation claims under the ADA are without merit; (2) Salamo's age discrimination claim is without merit; (3) Salamo was dismissed for just cause; and (4) Co-defendant Viviannette Menendez is not liable in her personal capacity.

Salamo, on the other hand, alleges that CTI discriminated against him on account of his age and his disability. In order to prove that CTI discriminated against him, Salamo offers as evidence two key facts. First, that Menendez, Salamo's supervisor, knew about his depression and his participation in the twenty-day hospitalization treatment program. Second, that she conducted the internal investigation only after he was admitted to the EAP program. Salamo premises his age discrimination claim on the fact that other employees at CTI's Caguas store are younger than him, their ages ranging from twenty-two to thirty-three, and were assigned to perform his job duties upon his termination.

## DISCUSSION

### I. DISABILITY DISCRIMINATION

▪ To establish a prima facie case under the ADA, Salamo must prove by a preponderance of the evidence: (1) that he is disabled within the meaning of the ADA; (2) that he is unable to perform the essential functions of his job, with or without reasonable accommodation; and (3) that the adverse employment decision was based in whole or in part on his disability. *Phelps v. Optima Health Inc.*, 251 F.3d 21, 24 (1st Cir.2001); *Marcano–Rivera v. Pueblo Int'l.*, 232 F.3d 245, 251 (1st Cir. 2000); *Garcia–Ayala v. Lederle Parenterals Inc.*, 212 F.3d 638, 646 (1st Cir.2000).

▪ A disability under the ADA is a physical or mental impairment that substantially limits one or more of a person's major life activities. 42 U.S.C. § 12102(2)(A)-(C); *see also Santiago Clemente v. Executive Airlines*, 213 F.3d

25, 30 (1st Cir.2000). In order to determine whether Salamo is disabled under the ADA, the Court must conduct a tripartite analysis. *Carroll v. Xerox Corp.*, 294 F.3d 231, 238 (1st Cir.2002); *Bragdon v. Abbott*, 524 U.S. 624, 631, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998). First, Salamo must prove that he suffers from a physical or mental impairment. *Carroll*, 294 F.3d at 238. Second, the Court must evaluate the life activities affected by the impairment to determine if they constitute a "major" life activity. *Id.* Lastly, "tying the two statutory phrases together, we ask whether the impairment substantially limits the activity found to be a major life activity." *Lebron–Torres v. Whitehall Labs.*, 251 F.3d 236, 239–40 (1st Cir.2001); *see also Gelabert–Ladenheim v. American Airlines*, 252 F.3d 54, 55 (1st Cir.2001). Furthermore, Salamo must possess a record of such impairment and be regarded as having such an impairment. 42 U.S.C. § 12102(2); 29 C.F.R. § 1630.2(e)(2)(g)(1)(2)(3).

### A. Salamo is not disabled under the ADA because he does not suffer an impairment which substantially limits any major life activity

▪ The parties do not dispute that Salamo's major depression amounts to a mental impairment. Accordingly, the court proceeds to inquire whether the life activities this impairment allegedly impinged upon constitute major life activities. Salamo alleges that his depression substantially limited his ability to sleep, perform manual tasks, drive long distances, concentrate and work. A list of "major life activities" provided by the HEW Rehabilitation Act regulations includes, "performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 45 CFR § 84.3(j)(2)(ii) (2001). Nonetheless, while Salamo claims to be limited in several of the major life activities recognized by statute, the only evi-

dence he offers in support thereof is his diagnosis of a "GAF" of 30. Salamo fails to explain, however, what a "GAF" of 30 entails or how it supports his allegations. The First Circuit has stated that:

> [i]t is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of an impairment. Instead, the ADA requires [that claimants offer] evidence that the extent of the limitation caused by their impairment in terms of their own experience is substantial.

*Calef v. Gillette Co.*, 322 F.3d 75, 83 (1st Cir.2003) (quoting *Toyota Motor Mfg., Inc. v. Williams*, 534 U.S. 184, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002)). Here, Salamo has offered no evidence documenting the extent of the limitations caused by his diagnosis or proffered sufficient evidence that he is substantially limited in any major life activity. While he makes general assertions regarding the impact and limitations the depression has had on his major life activities, he has not provided evidence in the record to support them.

According to the EEOC Regulations, "working" is a major life activity and it is substantially limited when a plaintiff is "(i) ... significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(i), § 1630.2(j)(3)(i)(2001); *Gelabert–Ladenheim*, 252 F.3d at 58. Salamo has offered absolutely no evidence that he is precluded from engaging in this or other types of gainful employment. Moreover, "when the major life activity of working is at issue (as opposed to any other major life activity), the plaintiff assumes a more fact-specific burden of proof." *Id.* (quoting *Quint v. A.E. Staley Mfg. Co.*, 172 F.3d 1, 11 (1st Cir.1999)). Given the lack of evidence to support his alleged limitation, Salamo is clearly unable to meet this burden.

Other than his inability to do work, Salamo does not identify another valid major life activity that is altered by his depression. In his reports, Dr. Caban indicated that Salamo's ability to interact, concentrate and think were substantially limited. Nonetheless, the caselaw is not clear regarding whether the "ability to interact" with others can be considered a major life activity under the ADA. In fact, the First Circuit has stated that, "[t]he concept of 'ability to get along with others' is remarkably elastic, perhaps so much so as to make it unworkable as a definition ... [f]urther, whether a person has such an ability may be a matter of subjective judgment; and the ability may or may not exist depending on context." *Soileau v. Guilford of Maine, Inc.*, 105 F.3d 12, 15 (1997). Accordingly, the Court finds unavailing Salamo's allegation that his ability to interact with others is substantially limited.

Salamo also alleges that he cannot perform manual tasks such as driving his car to work. In *Toyota Motor Mfg., Inc. v. Williams,* the Supreme Court stated that, "because the manual tasks unique to any particular job are not necessarily important parts of most people's lives, occupation-specific tasks may have only limited relevance to the manual task inquiry." 534 U.S. 184, 201, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002). Thus, although driving a long distance from Salamo's home to his job may be a unique part of his particular job, it seems unlikely that driving long distances would qualify as a manual task for ADA purposes, especially given the alternative of using public transportation. Therefore, the court finds that, in this instance, without any other indication as to what manual tasks Salamo is prevented from performing, this does not constitute a major life activity. In addition, Salamo

claims that his depression has prevented him from sleeping, yet again, he fails to offer any evidence to support this allegation.

■ Even if the Court were to concede that these are all major life activities, the relevant question is whether Salamo's depression "substantially impaired" his ability to work, sleep, perform manual tasks, drive long distances, and/or concentrate. A substantial limitation is one that "prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives. *The impairment's impact must also be permanent or long term." Id.* at 198, 122 S.Ct. 681.

Salamo has failed to proffer any evidence regarding how his alleged disability "substantially impaired" his major life activities. It is also important to note that Dr. Caban released Salamo and authorized him to return to work. Caban's only recommendation was that Salamo avoid additional stress by transferring to a store closer to his home. Caban did not state that Salamo's condition was permanent or long term and Salamo pointed to no evidence to support this inference. In addition, there is no indication that Salamo's condition precludes him from engaging in other gainful employment. Without such a showing, there is insufficient evidence to raise a genuine issue of material fact as to the existence of a disability as defined by the ADA.

Even assuming *arguendo* that Salamo's condition were to constitute a disability under the ADA, which the court declines to do, Salamo's claims must nevertheless fail since at the third prong of his *prima facie* case, he is unable to establish that his adverse employment action was motivated in whole or in part by his disability.

**B. Salamo is unable to proffer sufficient evidence that he was terminated on account of his disability**

At the third prong of the *prima facie* case, Salamo must establish that a causal connection exists between his disability and the adverse employment action. He must proffer sufficient evidence that his employers were motivated by discriminatory animus.

■ Salamo's only allegation to raise an inference of improper motive is that Menendez knew about his depression when she began the investigation. The facts reveal that Menendez was alerted as to Salamo's failure to follow instructions prior to his anxiety attack. He turned over the documents on his contracts prior to departing from CIPA. Even if Menendez conducted the investigation after Salamo had been admitted to treatment, this alone does not raise an issue of material fact regarding CTI's motive or intent to discriminate against him on account of his disability. On the contrary, CTI explains that Salamo was fired because he contravened established standard company policy of verifying potential customer's credit reports and releasing CTI merchandise without requiring or securing a deposit from the customer. CTI offers the contracts as evidence of just cause for terminating Salamo's employment and Salamo does not challenge the accuracy of the contracts, nor does he contest that he demanded deposits, as required by CTI company procedure.

Furthermore, around the same time as Salamo's employment was terminated, CTI also terminated several other employees namely, Magdalena Pomales and Fernando Mena, under identical circumstances. Pomales and Mena did not suffer from disabilities and were under the age of forty, thus undermining Salamo's claim. Aside from conclusory allegations, Salamo has not produced sufficient evidence from

which a reasonable fact finder could find that CTI "discharged [him] in whole or in part because of [his] disability" *Equal Employment Opportunity Comm'n v. Amego, Inc.*, 110 F.3d 135, 141 (1st Cir.1997), or that there was a "causal connection between [his] discharge and the conduct" of filing an ADA complaint. *Soileau*, 105 F.3d at 16. Accordingly, the court dismisses Salamo's ADA claim.

## II. RETALIATION CLAIM

■■ Salamo's retaliation claim under the ADA is independent from his disability claim since "an employee's eventual success in an [ADA] claim is irrelevant to his retaliation claim." *Mesnick*, 950 F.2d at 827. To establish a *prima facie* case of retaliation under the ADA, Salamo must demonstrate that: (1) he engaged in ADA protected conduct; (2) he was thereafter subjected to an adverse employment action; and (3) a casual connection exists between the protected conduct and the adverse action. *Orell v. UMass Mem'l Med. Ctr. Inc.*, 203 F.Supp.2d 52, 60 (D.Mass.2002); *Vizcarrondo v. Board of Trustees of University of Puerto Rico*, 139 F.Supp.2d 198, 204 (D.P.R.2001). Once a *prima facie* case of retaliation is made, the production burden shifts to the defendant to articulate a legitimate non-discriminatory reason for its employment decision. Once the employer does so, the burden shifts back to the plaintiff to establish a pretext for masking retaliation. In this step, "the critical inquiry becomes whether the aggregate evidence of pretext and retaliatory animus suffices to make out a jury question." *Mesnick*, 950 F.2d at 827.

■ Salamo asserts that CTI fired him in retaliation for his request to be transferred to a store closer to his home in Ponce. The facts however, indicate that the decision to terminate Salamo's employment was made prior to his return to work and his request for reasonable accommodation. Although he was handed his letter of termination one day after returning to CTI, this time lapse, in and of itself, is insufficient to prove that he was terminated based on his request for reasonable accommodation. CTI met its burden of articulating a legitimate reason for terminating Salamo's employment by submitting Salamo's contracts, which amply reveal his failure to abide by company procedures. Accordingly, the burden shifted back to Salamo to show that CTI's proffered reason was a pretext for disability discrimination or retaliation. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Because Salamo has not proffered any evidence to raise a genuine issue as to whether CTI's motive and intent to terminate his employment was discriminatory, his retaliation claim must also fail.

## III. AGE DISCRIMINATION

■ As pertains to Salamo's age discrimination claim, he has not brought a cause of action under the appropriate statute, the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 et seq. ("ADEA"). It is clear that "Title VII does not apply to discrimination on the basis of age." *Orell*, 203 F.Supp.2d at 59–60. Nonetheless, upon a liberal reading of the complaint, the court proceeds to evaluate Salamo's age discrimination claim in light of ADEA.

■ To establish a *prima facie* case of age discrimination, Salamo must demonstrate that (1) he is within the protected class (over the age of forty); (2) that his job performance was satisfactory and met CTI's legitimate expectations; (3) that he suffered an adverse employment action; and (4) that CTI sought a replacement with roughly equivalent job qualifications, thus revealing a continued need for the same services and skills. *Mesnick*, 950 F.2d at 823; *Flamand*, 876 F.Supp. at 368;

*Suarez v. Pueblo Int'l Inc.*, 229 F.3d 49, 53 (1st Cir.2000).

Establishing a *prima facie* case generates a rebuttable presumption of discrimination. While the burden of persuasion remains at all times with the plaintiff, the *prima facie* case shifts the burden of production to the employer, who must then articulate a legitimate and non-discriminatory reason for the adverse employment action. If the employer meets this limited burden, the presumption vanishes and the plaintiff must adduce sufficient evidence to demonstrate that age was a motivating factor in the challenged employment action. *Zapata–Matos v. Reckitt & Coleman, Inc.*, 277 F.3d 40, 45 (1st Cir.2002). To do so, the plaintiff must show that the proffered reason is pretextual such that discriminatory animus can be inferred. *Gonzalez v. El Dia, Inc.*, 304 F.3d 63, 69 (1st Cir.2002); *Mesnick*, 950 F.2d at 824 ("It is not enough for a plaintiff to merely impugn the veracity of the employer's justification, he must elucidate specific facts which would enable a jury to find that the reason given is not only a sham but a sham intended to cover up the employer's real motive, age discrimination.") *Mesnick*, 950 F.2d at 824 (*citing Medina–Munoz*, 896 F.2d at 9)

▆ Salamo's age discrimination case is clearly deficient. His only assertion regarding his age was that he was the oldest employee at CTI and that younger employees shared his former duties once he was terminated. This assertion alone is insufficient to meet his *prima facie* case. As discussed above, as a sales consultant, Salamo was required to verify a customer's credit prior to making a sale. In order to make a sale, Salamo falsified that Menendez waived his customer's deposit requirement, thereby violating CTI's standard procedure. Salamo offers no explanation for his actions and also proffers no evidence to show that his performance was

satisfactory and met CTI's legitimate performance expectations. Accordingly, he does not meet the second prong of his *prima facie* case: satisfactory performance.

Likewise, Salamo cannot establish the remaining elements of his *prima facie*. The only evidence that Salamo offers is that the other employees at CTI's Caguas store were younger than he was, their ages ranging from twenty-two to thirty-three, and were assigned his job duties after he was terminated. However, these facts, in and of themselves, do not prove that he was fired because of his age or that he was replaced with a younger employee.

Even assuming *arguendo* that Salamo could establish a *prima facie* case, CTI has proffered a valid non-discriminatory reason for firing him which Salamo has not disputed. Furthermore, Salamo has failed to introduce any evidence that the adverse actions taken against him were pretextual and discriminatory. Due to the lack of evidence establishing that Salamo was fired on account of his age, his age discrimination claim must also be dismissed.

## IV. CLAIM AGAINST VIVIANNETTE MENENDEZ IN HER PERSONAL CAPACITY

▆ CTI argues that the claims against Viviannette Menendez must be dismissed because she is not individually liable under Title VII or ADA. "Although the First Circuit Court of Appeals has declined to determine whether individuals can be held liable under the federal anti-discrimination statutes, almost all circuits that have addressed the issue have determined that individual liability is not authorized." *Orell*, 203 F.Supp.2d 52, 64; *Flamand v. American International Group, Inc.*, 876 F.Supp. 356, 363 (D.P.R.1994). Furthermore, there is ample jurisprudence in the district courts of this circuit finding

that ADA, ADEA, and Title VII do not contemplate the individual liability of supervisors. *Orell,* 203 F.Supp.2d at 64. (*citing Vizcarrondo,* 139 F.Supp.2d at 202). Consequently, Salamo's federal claims against Menendez in her individual capacity are hereby dismissed.

## CONCLUSION

For the foregoing reasons, the Court GRANTS defendants' summary judgment motion. Accordingly, the Court dismisses Salamo's federal claims with prejudice. The supplemental state law claims are dismissed without prejudice.

IT IS SO ORDERED.

San Juan, Puerto Rico, this 17th day of July 2003.