# United States Court of Appeals

## For the First Circuit

No. 04-1046

ABIGAIL GUZMÁN-ROSARIO,
CARLOS A. PÉREZ and their conjugal partnership,

Plaintiffs, Appellants,

v.

UNITED PARCEL SERVICE, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Héctor M. Laffitte, U.S. District Judge]

Before

Boudin, Chief Judge,

Torruella, Circuit Judge,

and Fusté,[*] District Judge.

Lixandra Osorio-Félix and Nicolás Nogueras, Jr. Law Offices on brief for appellants.
Pedro J. Manzano-Yates, Carlos M. Aquino-Ramos and Fiddler González & Rodríguez, PSC on brief for appellee.

February 3, 2005

---

[*]Of the District of Puerto Rico, sitting by designation.

**BOUDIN, <u>Chief Judge</u>**.  Abigail Guzmán-Rosario ("Guzmán") sued United Parcel Service ("UPS") in the district court for violations of Titles I and V of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12,101-12,213 (2000), and section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (2000).[1]  The district court granted summary judgment in favor of UPS and Guzmán now appeals.

The history can be briefly told.  In 1986, Guzmán began part-time work with UPS (four to five hours a day) at its package clearing center at its Muñiz Base facilities in Carolina, Puerto Rico.  Her main work assignment was to scan (with a laser reader) packages moving down an assembly line and, where necessary, to reposition packages on the belt.  This required her to stand and move around in the vicinity of the belt.

In November 1997, Guzmán felt pain in her left side and entered a hospital for a three-day stay.  She was eventually diagnosed with ovarian cysts; this condition sometimes disappears in a few months without surgery.  To see if the cysts resolved themselves and perhaps for other reasons, surgery was deferred for

---

[1]Title I prohibits employers from discriminating against a "qualified individual with a disability because of the disability," 42 U.S.C. § 12,112(a); Title V pertinently prohibits discrimination against individuals who engage in certain acts protected under the ADA, <u>see</u> 42 U.S.C. § 12,203(a).  The counterpart provision of the Rehabilitation Act is construed as congruent with Title I, <u>Oliveras-Sifre</u> v. <u>P.R. Dep't of Health</u>, 214 F.3d 23, 25 n.2 (1st Cir. 2000), and needs no separate treatment.

about eight months. In the end, the cysts did not disappear; they were surgically removed in July 1998, restoring Guzmán to health.

When she was hospitalized, Guzmán told her supervisor of her condition to excuse herself from work, which he permitted. Yet Guzmán thereafter suffered symptoms intermittently, including pain and occasional dizzy spells that required her to sit down or double over. Occasionally her symptoms were severe enough to require her to remain at home lying down. Partly on this account and partly because her son was repeatedly ill during this period and required hospital care, Guzmán was absent from work several times (in excess of her sick leave allowance) and was sometimes late to work.

In March 1998, Guzmán explained her condition to two supervisors, providing them with medical documentation evidencing her condition, to justify her absences from work and her occasional sitting down. Though one supervisor told Guzmán that "it was okay"; the other said that she had to resolve her condition because her absences and her sitting down while working were adversely affecting the company. In May 1998, Guzmán received a warning letter from the division manager--later withdrawn as untimely under the collective bargaining agreement--for lateness and absences during the period January through April. A second warning letter, relating to one more lateness in June, was timely.

In July 1998, UPS conducted a monthly audit of telephone usage and the auditor reported to the division manager that Guzmán

had been making excessive and unauthorized phone calls on company time. The division manager discharged Guzmán, treating the matter as a theft of time from the company (and so a listed ground for discharge); the company had apparently fired other employees in 1997 and 1998 on the same ground. In a written declaration, the division manager described the unauthorized phone calls as the reason for Guzmán's discharge, although he separately described an unrelated incident of Guzmán's conduct that he believed improper.

In September 1999, about 13 months after her discharge, an arbitrator found that the termination was not justified under the collective bargaining agreement because the company had not earlier described such calls as "theft" and the evidence against Guzmán was not strong. The company filed a court appeal but then settled, reinstating Guzmán and providing partial back pay for the period of her discharge.

Several months before the arbitration award issued, Guzmán filed an administrative charge of disability discrimination. In January 2002, the relevant agency rejected her claim and issued a right-to-sue letter. Three months later, Guzmán brought the present action in federal district court. Apart from an unsupported claim under the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. (2000), which Guzmán has now abandoned, the complaint charged UPS under the ADA and Rehabilitation Act with failure to

accommodate her alleged disability and retaliation against her for seeking an accommodation.

After discovery, UPS moved for summary judgment based on Guzmán's deposition and other documents. Deeming Guzmán's statement of contested facts inadequate under the local Puerto Rico rule,[2] the district court adopted UPS's statement of uncontested facts. See Corrada Betances v. Sea-Land Serv., Inc., 248 F.3d 40, 43-44 (1st Cir. 2001). The court then found that Guzmán had not been disabled prior to her surgery, had not requested an accommodation, and had not been not subject to retaliation. This appeal followed.

Review of the grant of summary judgment is de novo. See, e.g., Gelabert-Ladenheim v. Am. Airlines, Inc., 252 F.3d 54, 58 (1st Cir. 2001). UPS's list of uncontested facts is accepted, given Guzmán's failure properly to contest them; otherwise, inferences from the record are drawn in the light most favorable to Guzmán. See United Parcel Serv., Inc. v. Flores-Garcia, 318 F.3d 323, 330 (1st Cir. 2003). Here, the main issues turn on applying legal tests to (mostly) known circumstances.

Where a worker is disabled an employer may not assume stereotypically an inability to work and (beyond this) must provide

---

[2]A local district court rule, now D.P.R. Rule 56 and formerly D.P.R. Rule 311.12, requires that the statements of uncontested and contested issues be specific and supported by record citations. Guzmán's statement comprised six conclusory statements with no citations.

"reasonable accommodation" unless undue hardship is shown. 42 U.S.C. § 12,112(b)(5); see id. § 12,112(a)-(b). Having a "disability" means having or being "regarded as" having a mental or physical impairment that "substantially limits one or more . . . major life activities." Id. § 12,102(2)(A), (C). We have regularly consulted EEOC definitions of the terms, e.g., Wright v. CompUSA, Inc., 352 F.3d 472, 476 (1st Cir. 2003), but no agency has been granted authority to issue binding regulations interpreting the term "disability." Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 194 (2002).

Two different issues are presented as to Guzmán's claim that she was disabled during the period in question. One is whether the ovarian cysts were sufficiently long-lasting a condition to qualify as a "disability" rather than a temporary affliction; the other is whether, duration aside, Guzmán's condition impinged sufficiently on a "major life activity" to be treated as disabling. The district court ruled against Guzmán on both counts.

Starting with the first of these issues, the ADA is not a medical leave act nor a requirement of accommodation for common conditions that are short-term or can be promptly remedied. The Supreme Court stated in Toyota that in order to be "substantially limit[ing]," an impairment must be "permanent or long term." Toyota, 534 U.S. at 198. This may encompass conditions that are

-6-

"potentially long-term, in that their duration is indefinite and unknowable," <u>Santiago Clemente</u> v. <u>Executive Airlines, Inc.</u>, 213 F.3d 25, 31 (1st Cir. 2000) (internal quotation marks omitted), but not those that are brief or foreseeably temporary, <u>Carroll</u> v. <u>Xerox Corp.</u>, 294 F.3d 231, 240-41 (1st Cir. 2002) (three-month medical leave for chest pains), <u>Soileau</u> v. <u>Guilford of Me., Inc.</u>, 105 F.3d 12, 16 (1st Cir. 1997) (five-week leave from work and four-month activity restriction because of a depressive attack).

Although <u>Santiago Clemente</u> suggested in dictum that an impairment of whose duration "is expected to be at least several months" might qualify as a disability if severe enough, 213 F.3d at 31, this was before <u>Toyota</u>'s "permanent or long term" pronouncement, and other cases may suggest that longer periods are required. <u>E.g.</u>, <u>Carroll</u> 294 F.3d at 240-41; <u>Soileau</u>, 105 F.3d at 16. Case law in other circuits is also uncertain.[3] The reasons for the uncertainty are apparent.

The statute itself says nothing about duration and nothing in the term "disability" or its definition gives a judge, and still less a jury, much guidance. The problem is primarily a policy choice to which Congress did not speak clearly; and the Supreme Court has done no more than extrapolate, from some

---

[3]<u>See</u> 1 <u>Americans with Disabilities Act Handbook</u> § 3.08, at 127 n.453 (Henry H. Perritt, Jr. ed., 4th ed. 2003) (collecting cases); <u>Employment Discrimination Law</u> 165-66 & nn.109-11 (C. Geoffrey Weirich ed., 3d ed. supp. 2002) (same).

estimated numbers of those to be covered, that severe restrictions of very important activities were what Congress had in mind. See Toyota, 534 U.S. at 197-98. Until the Supreme Court fine-tunes its interpretation, it will be unclear how lower courts should deal with periods between, say, 6 and 24 months.

In this case, Guzmán's period of impairment falls within this zone, very close to the shorter end. That the impairment was not severe lends some support to the district court's resolution, as our case law suggests that shorter durations are tolerated only for more severe impairments. See, e.g., Santiago Clemente, 213 F.3d at 31, Soileau, 105 F.3d at 15-16. Still, we think it best to reserve the issue and rest our own affirmance on the district court's second determination that Guzmán's disability did not "substantially" limit a major life activity.

One major life activity relied on by Guzmán is "working." The Supreme Court has expressed some doubt whether working can be so described. See Sutton, v. United Air Lines, Inc., 527 U.S. 471, 492 (1999). The EEOC regulations by contrast assume that "working" is a major life activity. They state that a plaintiff is "disabled" even if she can still work but if she is significantly restricted in or precluded from performing either a "class" of jobs--a set of jobs utilizing similar skills, knowledge, and training to her prior job--or a "broad range" of jobs in various classes--a large set of jobs that vary in what skills are required.

See Gelabert, 252 F.3d at 60 (quoting 29 C.F.R. § 1630.2(j)(3)(ii)-(iii)).

Awaiting a definitive ruling from the Supreme Court otherwise, we have assumed that "working" is a major life activity and applied the EEOC's framework in dismissing plaintiffs' ADA claims, e.g., Sullivan v. Neiman Marcus Group, Inc., 358 F.3d 110, 115-16 (1st Cir. 2004). So doing, we have required claimants to show that they were precluded from more than the performance of a particular job. See Carroll, 294 F.3d at 240; Lebron-Torres v. Whitehall Labs., 251 F.3d 236, 240 (1st Cir. 2001). Guzmán's evidence of work difficulties--the occasional need to sit down and the occasional inability to come to work because dizziness and pain required her to lie down--showed at most difficulties in performing her one particular job at UPS.

Guzmán also claims as major life activities caring for her family, socializing, doing housework, and driving. Here, too, the law is unclear as to what counts;[4] but in all events caring for oneself commonly treated as a major life activity, e.g., Fraser v. Goodale, 342 F.3d 1032, 1038 (9th Cir. 2003); Fenney v. Dakota,

---

[4]See, e.g. Felix v. N.Y. City Transit Auth., 324 F.3d 102, 106 (2d Cir. 2003) (driving is not a major life activity); Sinkler v. Midwest Prop. Mgmt. Ltd. P'Ship, 209 F.3d 678, 685 (7th Cir. 2000) (not deciding whether driving is a major life activity); see also EEOC v. Sara Lee Corp., 237 F.3d 349, 353 (4th Cir. 2001) (considering claimant's ability to care for her son as indicative of her ability to care for herself); Krauel v. Iowa Methodist Med. Ctr., 95 F.3d 674, 677 (8th Cir. 1996) (holding that "caring for others" is not a major life activity).

<u>Minn. & E. R.R. Co.</u>, 327 F.3d 707, 714-15 (8th Cir. 2003). In this case, further refinements are not needed since <u>Toyota</u> requires that the impairment "prevent[] or severely limit[]" the major life activity. 534 U.S. at 198. Guzman showed nothing more than occasional pain or dizziness; there is no evidence that these episodes were so frequent as to significantly impinge on the overall performance of the above non-work activities, and the record shows that she could perform these tasks most of the time.

On appeal, Guzmán argues alternatively that she was "regarded as" disabled by UPS. <u>See</u> 42 U.S.C. § 12,102(2)(C); <u>Sutton</u>, 527 U.S. at 489. However, Guzmán never presented to the district court her argument that she was disabled because she was "regarded as" being unable to perform her work or any broader set of jobs. <u>Cf.</u> <u>Sheehan</u> v. <u>City of Gloucester</u>, 321 F.3d 21, 24 (1st Cir. 2003). This forfeits this claim on appeal. <u>Campbell</u> v. <u>BankBoston, N.A.</u>, 327 F.3d 1, 10 (1st Cir. 2003).

Finally, Guzmán claims that UPS retaliated against her for protected conduct, which is separate claim under the ADA, <u>see</u> 42 U.S.C. § 12,203(a), and does not depend on the success of the plaintiff's disability claim. <u>See</u> <u>Wright</u>, 352 F.3d at 477-78. The claim is usually made by one who requests an accommodation or complains about a refusal to accommodate and is then punished for the request or the complaint. <u>See</u> <u>id.</u> But Guzmán never directly requested an accommodation, and her only complaints--to the agency

and then to the court--came <u>after</u> her discharge, so the discharge was certainly not retaliation for them.

Conceivably Guzmán might argue that by notifying her supervisor of her condition she was implicitly requesting an accommodation. Even on this doubtful assumption,[5] nothing suggests that her superiors had any negative reaction to being informed of her condition or that her discharge was in any way a retaliation for this disclosure, <u>see</u> <u>Oliveras-Sifre</u>, 214 F.3d at 26, particularly in light of the several-month delay between the notification and her discharge. <u>Compare</u> <u>Williams</u> v. <u>Phila. Hous. Auth. Police Dep't</u>, 380 F.3d 751, 760-61 (3d Cir. 2004), <u>petition for cert. filed</u>, (U.S. Dec. 22, 2004) (No. 04-873), <u>with</u> <u>Wright</u>, 352 F.3d at 478.

This case is a useful reminder that the ADA is not a cure for all work-affecting medical difficulties and, also, that some of them have other remedies. Here, the collective bargaining agreement appears to have done its work. With reinstatement and partial back pay, Guzmán must be content.

<u>Affirmed</u>.

---

[5]<u>See</u> <u>Estades-Negroni</u> v. <u>Assocs. Corp. of N. Am.</u>, 377 F.3d 58, 64 (1st Cir. 2004) ("Under the ADA, requests for accommodation must be express and must be linked to a disability."); <u>Reed</u> v. <u>LePage Bakeries, Inc.</u>, 244 F.3d 254, 261 (1st Cir. 2001) ("[T]he ADA's reasonable accommodation requirement usually does not apply unless 'triggered by a request' . . . .").