Jayrie RIVERA CONCEPCION,
Cynthia Concepcion, and Jorge
Viera, Plaintiffs,

v.

Commonwealth of PUERTO RICO,
et al.,[1] Defendants.

Civil No. 08–2378 (FAB).

United States District Court,
D. Puerto Rico.

Jan. 20, 2010.

---

1. Listed defendants are: the Commonwealth of Puerto Rico, the Legislative Assembly c/o Kenneth McClintock and Jose Aponte–Hernandez, the Programa Cordova and Fernos de Internados Congresionales, Francisco Rodriguez Carambot, John Doe and Richard Roe. Plaintiffs had 120 days from the filing of their amended complaint to substitute unknown defendants with actual defendants, unless they provided good cause for an extension. *See* FED.R.CIV.P. 4(m). Plaintiffs have had ample time to amend their amended complaint and to serve process on proper defendants but have failed to do so without showing good cause. The Court therefore **DISMISSES plaintiffs' claims** against all unknown defendants.

Daliah Lugo–Auffant, Miguel A. Perez–Vargas, Perez Vargas & Lugo Auffant Law Offices, Hato Rey, PR, for Plaintiffs.

Lumy Mangual–Mangual, P.R. Department of Justice, Luis Berrios–Amadeo, Cancio, Nadal, Rivera & Diaz, San Juan, PR, Ivan M. Castro–Ortiz, Michael C. McCall, Aldarondo & Lopez Bras, Guaynabo, PR, for Defendants.

## OPINION AND ORDER

BESOSA, District Judge.

Plaintiffs first filed this civil action before the Court of First Instance for the Commonwealth of Puerto Rico on January 22, 2008. They alleged violations of federal law pursuant to the Americans with Disabilities Act ("ADA") and the Civil Rights Act, 42 U.S.C. §§ 1981, 1983, 1985, and violations of Commonwealth law pursuant to the Constitution of Puerto Rico and various local laws. The defendants removed the action to this Court on December 10, 2008. Before the Court is defendants' motion to dismiss [2] for failure

2. The Court granted the Commonwealth of Puerto Rico's motion to join the motion to dismiss (Docket No. 44) and now **GRANTS** defendant Jose Aponte–Hernandez's motion (Docket No. 22) to join as well. An entry of default issued by the Commonwealth Court remains in effect for defendant Francisco Rodriguez–Carambot. (*See* Docket No. 31) There has been no documentation produced regarding service of process made upon the Program Cordova y Fernos de Internados Congresionales ("Program"), another defendant, either in the Commonwealth Court or otherwise. Plaintiffs are hereby **ORDERED**

to state a claim upon which relief may be granted. (Docket No. 12) Plaintiffs opposed the motion. (Docket No. 33) Defendants replied. (Docket No. 34) For the reasons discussed below, the Court hereby **DENIES IN PART and GRANTS IN PART** the motion to dismiss and **ORDERS PARTIES TO SUBMIT SIMULTANEOUS MEMORANDA AS DIRECTED BELOW NO LATER THAN FEBRUARY 3, 2010.**

### FACTUAL BACKGROUND

The Court draws the following facts from the plaintiffs' amended complaint (Docket No. 10–3) and takes them as true for the purpose of resolving defendants' motion. Plaintiff Jayrie Rivera Concepcion ("Rivera"), who was twenty-two years old at the time the amended complaint was filed, lived in Puerto Rico with her mother, Cynthia Concepcion ("Concepcion"), and stepfather, Jorge Viera ("Viera"), also plaintiffs in this case.

In 2006, Rivera applied for admission to the Cordova and Fernos Program of Congressional Internships ("Program"), which Rivera learned about from notices at the University of Puerto Rico ("UPR"). At UPR, Rivera was majoring in Labor Relations, and claims she was an outstanding student in the process of obtaining her degree with honors. Plaintiffs claim that the Program to which Rivera applied promised a semester-long internship opportunity in the United States Congress or an agency of the federal government which would be accepted for academic credit at UPR. Through the Program, the Legislative Assembly of Puerto Rico would cover round-trip air fare, lodging, and tuition as well as a *per diem* for each participating student.

On December 4, 2006, after completing the admissions process, Rivera was notified of her admission to the Program for the January through May, 2007 semester. On January 16, 2007, Rivera participated in the Program's orientation workshop. At the orientation, Rivera was provided with information about her transfer to Washington, D.C., where her internship would begin. Francisco Rodriguez–Carambot ("Rodriguez") and Cesar Hernandez ("Hernandez"), a representative of the "Washington Center,"[3] directed the Program's orientation workshop. On January 18, 2007, Rivera traveled with Program participants and Rodriguez to Washington, D.C. to start the semester. When she arrived in Washington, D.C., Rivera had not yet been placed in an internship, but was enrolled in the Program in a class at Johns Hopkins University. On January 18, 2007, Rodriguez gave Rivera a check for three hundred dollars from the Puerto Rico Senate constituting her first *per diem* payment.

At approximately 5:00 p.m. on January 23, 2007, Rodriguez called Rivera's mother, Cynthia Concepcion. He informed Concepcion that Rivera had been "expelled" from the Program due to "erratic conduct" and that Rivera had to return immediately to Puerto Rico. Rodriguez told Concepcion that Rivera could use the ticket meant for her return to Puerto Rico at the end of the Program. Rodriguez told Concepcion to give him ten minutes while he informed Rivera about her expulsion.

---

**to show cause no later than February 3, 2010** why their action against the Program should not be dismissed without prejudice for failure to service process within 120 days. Fed. R.Civ.P. 4(m)

3. According to the Amended Complaint, the Washington Center is an institution that collaborates with the Program to place participating students in their internships with Congress or federal agencies.

Concepcion received no subsequent communication from Rodriguez and was unable to contact Rivera. Plaintiffs claim that "no one knew about Rivera's whereabouts or her status." (Docket 10–3 at 3) During the late evening of January 23, 2007 and early morning of January 24, 2007, Concepcion made numerous telephone calls to the police in Washington, D.C. and Alexandria, Virginia, where the students of the Program were lodged. Alexandria police officers located Rivera disoriented and wandering aimlessly in the streets in shorts and a t-shirt when the outside temperature was thirty-two degrees Fahrenheit.

On January 24, 2007, Rivera was admitted to the psychiatric unit of the Inova Mount Vernon Hospital with a diagnosis of bipolar disorder in the manic phase. Rivera claims she had not previously suffered from bipolar disorder or any other serious mental or physical health condition.

On January 25, 2007, Rivera's mother and step-father traveled to Washington, D.C. Once there, they contacted the defendants [4], who told them that Rivera had not been expelled for disciplinary problems or conduct, but for her health condition. Rivera's parents remained in Washington, D.C. until Rivera's release from the hospital on February 18, 2007, when she was discharged to return to Puerto Rico with her parents.

Plaintiffs claim that no employee or representative of the Program or from the Washington Center intervened or showed support to Rivera or her parents with the situation. Plaintiffs further claim that, despite the fact that Rivera's roommate observed symptoms such as going outside without a coat or appropriate clothes for the weather, neither Rodriguez nor any other employee or representative of the Program for the Washington Center took any action to provide medical care, counseling, or support while Rivera was in the Program. Plaintiffs also contend that the Program's personnel did nothing to help Rivera or prevent her from going into the street and engaging in risky behavior. The only action that Rodriguez took when he learned of Rivera's symptoms was to expel her suddenly and to contact her mother in order to return Rivera to Puerto Rico as soon as possible, without any explanation or evaluation whatsoever. Plaintiffs further contend that it was Rivera's sudden expulsion that triggered Rivera into crisis.

Once Rivera's parents informed Rodriguez and the Program's personnel at the Washington Center about Rivera's situation, Rodriguez and the Program staff refused to cooperate to help clarify Rivera's situation or provide information about what happened. Neither did they provide any reasonable accommodation to help Rivera rejoin the Program. Instead, Rodriguez and the Program's staff notified UPR and apparently told UPR to drop Rivera from her semester courses without verbal or written explanation.

As of the writing of the Amended Complaint in July of 2008, Rivera had not received any official communication from the Program or the Washington Center explaining the reason for her expulsion, nor any response to Rivera's numerous requests for information regarding her academic file or her expulsion. Rivera has not received any communication regarding her readmission to the program, or information about how to recover the semester

---

4. Plaintiffs do not specify in the amended complaint which defendants were contacted. The Court assumes that Rodriguez and other Program staff were contacted at this time, not members of the Puerto Rico Senate or other legislative officials.

she lost due to her expulsion from the Program.

Rivera has continued to receive medical treatment. Her condition is stable. She returned to her studies and expected to complete her Bachelor's Degree in 2008. Plaintiffs contend that ever since Rivera was stabilized on or around February, 2007, Rivera has been and continues to be fully qualified to carry out the basic functions of the Program from which she was expelled.

Plaintiffs contend that the defendants' actions and omissions constitute gross negligence, disability based discrimination, and a violation of her rights under federal and local laws. Rivera claims mental, emotional and financial damages as a result of the above discussed facts.

## GOVERNING STANDARD

■■■■ Pursuant to Rule 12(b)(6), a complaint should be dismissed where a plaintiff does not "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, — U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim is plausible on its face if it "raises a right to relief above the speculative level," *Bell Atl. Corp.*, 550 U.S. at 570, 127 S.Ct. 1955, by pleading enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft*, 129 S.Ct. at 1949. The court will accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor. *Id.; see also Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 51 (1st Cir.1990). The Court need not credit, however, "bald assertions [and] unsupportable conclusions" when evaluating the complaint's allegations, *Aulson · v. Blanchard*, 83 F.3d 1, 3 (1st Cir.1996), nor "accept as true a legal conclusion couched as a factual allegation," *Bell Atl. Corp.*, 550 U.S. at 570, 127 S.Ct. 1955 (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).

## DISCUSSION

Defendants move for dismissal because: (1) plaintiffs failed to exhaust their administrative remedies;[5] (2) plaintiffs fail to state a claim against the Senate[6] under the Civil Rights Act; (3) plaintiffs fail to

---

**5.** In their reply memorandum, the defendants raise three new arguments, not brought up in their original papers, regarding the plaintiffs' disability claims: (1) that defendants were unaware of Rivera's disability; (2) that Rivera is not disabled within the meaning of the ADA or Rehabilitation Act; and (3) that the branches of the Puerto Rico government enjoy sovereign immunity from claims pursuant to Title II of the ADA. Reply memorandums in support of dispositive motions are limited to rebuttal of factual and legal arguments raised in the opposition. *Wills v. Brown Univ.*, 184 F.3d 20, 27 (1st Cir.1999); *United States v. Brennan*, 994 F.2d 918, 922 n. 7 (1st Cir. 1993). Arguments raised for the first time in a reply memorandum will not be considered by this Court. Sovereign immunity, however, "can be raised at any time," *Coggeshall Development Corp. v. Diamond*, 884 F.2d 1, 2 (1st

Cir.1989) (internal citations and quotation omitted). Therefore, the Court **ORDERS THE PARTIES TO BRIEF THE COURT SIMULTANEOUSLY NO LATER THAN FEBRUARY 3, 2010** regarding the defendants' contention that the legislative branches of the Commonwealth of Puerto Rico should enjoy sovereign immunity from the plaintiffs' Title II ADA claims.

**6.** Although the original motion to dismiss moved for dismissal of the civil rights claims as they pertain to the Senate of Puerto Rico, the Court addresses all arguments as they apply to all joining defendants: the Senate of Puerto Rico, Kenneth McClintock, (the then President of the Senate), the Commonwealth of Puerto Rico, and Jose Aponte (the then Speaker of the House of Representatives).

state a claim under Section 1 of Article II of the Puerto Rico Constitution; (4) plaintiffs fail to state a claim against the Senate pursuant to Puerto Rico Law 44; and (5) defendants have immunity from plaintiffs' tort claims. The Court examines each of defendants' assertions in turn.

## I. Exhaustion of Administrative Remedies

Defendants contend that this Court must dismiss plaintiffs' case because the plaintiffs failed to exhaust their administrative remedies properly. Plaintiffs argue that the defendants' contention is misplaced; they argue that the disability claims in this case arise out of Title II of the ADA and the Rehabilitation Act[7] because the claims regard Rivera's participation in a "public internship program" that "operates with state and federal funds." Plaintiffs maintain that Title II ADA claims, unlike Title I ADA claims, do not require plaintiffs to exhaust administrative remedies. The plaintiffs are correct.

■ Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The requirements for Title II ADA claims are distinct from those pursuant to Title I claims. "Notably, plaintiffs need not exhaust their administrative remedies before filing suit under Title II." *Downs v. Massachusetts Bay Transp. Authority,* 13 F.Supp.2d 130, 136 (D.Mass.1998). Courts that have examined whether plaintiffs must exhaust their administrative remedies pursuant to Title II of the ADA have consistently held that administrative exhaustion is not a requirement for a Title II claim. *See Mitchell v. Mass. Dept. of Correction,* 190 F.Supp.2d 204, 209–10 (D.Mass.2002) (summarizing case law regarding administrative exhaustion pursuant to Title II of the ADA). Accordingly, defendants' motion to dismiss the plaintiffs' disability claims pursuant to Title II of the ADA and the Rehabilitation Act is **DENIED.**

## II. Failure to State a Claim

Defendants argue that plaintiffs fail to state a claim pursuant to the Civil Rights Act for two reasons: (1) The Senate is not a "person" for purposes of liability under the Civil Rights Act; and (2) Plaintiffs fail to state a claim under Section 1981 of the Civil Rights Act.[8]

7. Defendants argue that the plaintiffs did not seek relief under the Rehabilitation Act because neither the word "rehabilitation" nor any citation to the Rehabilitation Act itself appears in their amended complaint. (*See* Docket No. 34 at 3) It is well-settled, however, that "Section 504 of the Rehabilitation Act ... is materially identical to Title II of the ADA except that it is limited to programs that receive federal financial assistance." *Scott v. Androscoggin County Jail,* 866 A.2d 88, 95 n. 3 (Me.2004) (internal citation omitted). Because Title II "is modeled on § 504 of the Rehabilitation Act," the First Circuit Court of Appeals has explained that "In applying Title II ... we rely interchangeably on decisional law applying § 504." *Parker v. Universidad de Puerto Rico,* 225 F.3d 1, 3 (1st Cir.2000)

(internal citations omitted); *see also, id.* at 3 n. 2 ("Title II essentially extends the reach of § 504 to state and local government entities that do not receive federal financial assistance.") Accordingly, the Court will not dismiss the plaintiffs' Rehabilitation Act claims simply because they were separately alleged in the amended complaint.

8. Plaintiffs also summarily alleged in their amended complaint that the defendants violated section 1985 of the Civil Rights Act (*see* Docket No. 10–3 at 5). The section 1985 claims were never discussed in the motion papers by any party, and the record itself does not support a section 1985 claim. *See Horta v. Sullivan,* 4 F.3d 2, 9 n. 9 (1st Cir.1993) (citing *United Bhd. of Carpenters v. Scott,* 463

## A. Whether the Senate is a Person

The defendants argue that the Commonwealth of Puerto Rico is not a "person" for purposed of liability under the Civil Rights Act. The Court agrees.

42 U.S.C. § 1983 [9] ("Section 1983") only imposes liability on "persons." *See Martinez–Velez v. Simonet*, 919 F.2d 808, 810 (1st Cir.1990). More than twenty years ago, the United States Supreme Court held that a state, its agencies, and state officials acting in their official capacities [10] are not "persons" within the meaning of section 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Brown v. Newberger*, 291 F.3d 89, 92 (1st Cir.2002).

■ In their opposition to the motion to dismiss,[11] the plaintiffs offer only one line:

"Plaintiffs do not claim against 'the Senate' under the Civil Rights Act." While this may be so, it is well-settled that a state, its agencies, and officials acting in official capacities are not "persons" under 1983. Plaintiffs may not have named the Puerto Rico Senate as a defendant in this case, the plaintiffs did name, however, the Commonwealth of Puerto Rico and the Legislative Assembly of Puerto Rico "care of Kenneth McClintock and Jose Aponte." (Amended Complaint, Docket No. 10–3) (whatever that means). Further, the plaintiffs explain that the Legislative Assembly "is sued through the Chairmen [sic] of the Houses it is comprised of, Hon. Kenneth McClintock and Hon. Jose Aponte." Because McClintock was the President of the Senate of Puerto Rico at the time he was served for this case, it is

U.S. 825, 834–37, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983)) (reaffirming that section 1985 requires a showing of some racial, or perhaps otherwise class-based, animus behind the conspirators' actions); *Griffin v. Breckenridge*, 403 U.S. 88, 102–03, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971) (explaining elements of a claim under section 1985(3)). The Court accordingly **DISMISSES** all claims which may have been alleged pursuant to section 1985 of the Civil Rights Act.

9. Section 1983 provides as follows:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia." 42 U.S.C. § 1983.

10. "Obviously," the United States Supreme Court explained in *Will v. Michigan Dept. of*

*State Police*, "the state officials literally are persons;" however, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985)).

In this case, the plaintiffs sue the state officials in their official capacities for damages, and not for injunctive relief. A state official in official capacity sued for injunctive relief "would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the States." *Will*, 491 U.S. at 71 n. 10 [109 S.Ct. 2304] (internal quotation and citations omitted).

11. The Court notes with disapproval the cursory nature of the plaintiffs' opposition to the motion to dismiss. Less than three pages comprise the plaintiffs' argument section, in response to more than seven pages of legal argument put forth in the motion to dismiss itself. The plaintiffs responded in a single sentence to two of the defendants' arguments in the motion to dismiss and provide no analysis or authority to ground their opposition. Such minimal attention to the motion to dismiss receives the attention it deserves from this Court: very little.

understandable that his motion to dismiss [12] addressed the plaintiffs' claims as to the Senate. The law is clear, however, that neither the Senate nor the Legislative Assembly, nor any agency or official representing the Commonwealth of Puerto Rico may be considered a person pursuant to section 1983 for the purposes of liability. Plaintiffs' section 1983 claims against the Commonwealth of Puerto Rico, the Legislative Assembly and all other branches of the Commonwealth of Puerto Rico, and both Jose Aponte and Kenneth McClintock in their official capacities are hereby **DISMISSED WITH PREJUDICE.**

## B. Whether plaintiffs stated a claim pursuant to section 1981 of the Civil Rights Act

■ Defendants claim that the plaintiffs failed to state a claim pursuant to section 1981 because section 1981 pertains to racial animus [13] and "the Amended Complaint is devoid of any allegations from which the Court may infer a racial animus for the allegedly discriminatory actions ..." (Docket No. 12 at 5) Plaintiffs' confusing and poorly constructed one-sentence response states merely that the plaintiffs raised a claim under Section 1981(a), "which provides for compensatory and punitive damages for actions of intentional discrimination in employment" under the ADA and the Rehabilitation Act.

Plaintiffs have mistakenly invoked section 1981a as though it were a section under which a claim can be raised. Section 1981a actually delimits the types of recovery available in other substantive actions brought under certain sections of the Civil Rights Act of 1964. Plaintiffs therefore misunderstand basic applications of the law, trying to raise a "claim" pursuant to a section of a statute pertaining exclusively to remedies. Given that no independent claim may be raised under section 1981a, the Court need take no further action. Furthermore, because no racial animus was raised in the amended complaint, plaintiffs do not (and seemingly never intended to) raise a claim pursuant to 1981(a) governing contract rights "enjoyed by white citizens." [14] In other words, plaintiffs have no claim pursuant to section 1981a or to 1981(a), and this Court need not dismiss one or the other.

## III. Whether plaintiffs failed to state a claim pursuant to Section 1, Article II of the Puerto Rico Constitution

■ The defendants' motion to dismiss contends that the plaintiffs failed to state a claim pursuant to Section 1 of Article II of

---

**12.** The motion to dismiss was filed by McClintock and later joined by other defendants.

**13.** "Among the many statutes that combat racial discrimination, § 1981, originally § 1 of the Civil Rights Act of 1866, 14 Stat. 27, has a specific function: It protects the equal right of '[a]ll persons within the jurisdiction of the United States' to 'make and enforce contracts' without respect to race." *Domino's Pizza, Inc. v. McDonald,* 546 U.S. 470, 474–75, 126 S.Ct. 1246, 163 L.Ed.2d 1069 (2006) (citing 42 U.S.C. § 1981(a)). As the Supreme Court explained in *Domino's Pizza, Inc. v. McDonald,* "We have never retreated from what should be obvious from reading

the text of the statute: Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship." *Id.* at 475.

**14.** The Court finds it disturbingly likely that the plaintiffs do not comprehend the difference between 1981a and 1981(a)—or somehow became confused regarding the differences in the two statutory structures.

the Puerto Rico Constitution.[15] Section 1, Article II of the Puerto Rico Constitution provides:

> The dignity of the human being is inviolable. All men are equal before the law. No discrimination shall be made on account of race, color, sex, birth, social origin or condition, or political or religious ideas. Both the laws and the system of public education shall embody these principles of essential human equality.

P.R. CONST. art. II, § 1.

The defendants argue that the amended complaint "lacks any allegation to the effect that any of the Plaintiffs were discriminated against because of the reasons prescribed in this section: race, color, sex, social origin or condition or political or religious ideas." (Docket No. 12 at 6) Defendants fail to cite to any authority regarding the scope of the Constitutional protections against discrimination, or regarding definitions for each prohibited area of discrimination. For example, they fail to address whether "social origin or condition" might include physical or mental disability. In fact, the defendants' argument on this issue is three sentences in length, one of which even misquotes the text of the Constitution. Neither do plaintiffs offer any additional insight. Plaintiffs offer absolutely no response to the motion to dismiss on this specific issue, instead arguing only that "All of these arguments [16] are untimely," because they require the Court "to consider the merit of the allegations and defenses ..." (Docket No. 13 at 4)

The Court is not required to do the parties' homework for them. In fact, the local rules require "[a]ll matters submitted to the Court for consideration" to "be presented by written motion filed with the Clerk of Court incorporating a memorandum of law, *including citations and supporting authorities.*" Local Rule 7(a)(2009) (emphasis added). Given the parties' lack of due diligence in briefing the Court on this issue, and the flouting of local rules governing the submission of written motion papers, the Court's independent review of the issue is deservedly brief.

The Court's own research found that, in a 2005 case arising in Puerto Rico, Judge Acosta granted summary judgment (as to an Article II, Section 3 claim) to a former employer where the employer decided against rehiring the plaintiff due to the plaintiff's alleged mental disability, bipolar disorder. In that case, *Velez v. Janssen Ortho LLC,* 389 F.Supp.2d 253 (D.P.R. 2005), the court explained that "with respect to the plaintiff's constitutional claim, the conduct complained of does not rise to the level of an actionable conduct as a matter of law." *Id.* at 265. The *Velez* court also held, however, that the plaintiff had failed to put forth sufficient evidence from which a reasonable person could conclude she was disabled within the meaning of the ADA. It thus remains unclear whether the constitutional claim in *Velez* failed because the court found no evidence to support a showing of a disability pursuant to the ADA or because the court found that discrimination based on a mental disability does not violate Article II, Section 1

---

15. As the plaintiffs correctly note in their opposition to the motion to dismiss, the defendants misquoted the text of the Puerto Rico Constitution.

16. "These arguments" appears to refer to the defendants' arguments pertaining to local

laws. Plaintiffs failed to address each of the defendants' arguments separately, and instead made the poor choice of responding to all arguments regarding local law in a single summary paragraph citing no authority or legal standards to guide this Court's analysis.

of the Puerto Rico Constitution. The *Velez* case, which is not binding on this Court, does not conclusively preclude the plaintiffs' constitutional claims based on discrimination due to bipolar disorder.

This Court also found that, according to the annotations attached to Westlaw's latest version of the Constitutional text at issue, "Jurisprudence of the federal Supreme Court appears to indicate that persons infected with AIDS should be entitled to a medical evaluation prior to any decision which would adversely affect their employment, since to act otherwise would be discriminatory." P.R. CONST. art. II, § 1, annotation 13 (Discrimination) (internal citation omitted). This annotation to the Puerto Rico Constitution implies that a plaintiff alleging discrimination based on a physical disability, AIDS, may have an actionable constitutional claim.

The research done by the Court does not provide a clear answer as to whether plaintiffs' allegations of discrimination based on Rivera's mental disorder may constitute, as a matter of law, a claim pursuant to Article II, Section 1 of the Puerto Rico constitution. At this stage of proceedings, without additional facts in the record or more authority saying otherwise, the Court cannot yet make a determination that plaintiffs' assertion of discrimination on the basis of Rivera's bipolar disorder does not constitute a constitutional claim pursuant to the Puerto Rico Constitution. The defendants' motion to dismiss the claim pursuant to Article II, Section 1 of the Puerto Rico Constitution is therefore **DENIED.**

## IV. Whether plaintiffs failed to state a claim pursuant to Puerto Rico Law 44

Defendants contend that plaintiffs have failed to state a claim pursuant to Puerto Rico Law Number 44 of June 2, 1985, as amended, P.R. Laws Ann., tit. 1, §§ 501–511(b) ("Law 44") because: (1) defendants had no knowledge that Rivera was disabled at the time she was expelled; and (2) the amended complaint fails to allege that Rivera's condition substantially affected a major life activity. (*See* Docket No. 12 at 7) Plaintiffs contend that their amended complaint "make[s] out at least a *prima facie* case of discrimination." (Docket No. 13 at 4)

■ Puerto Rico's Law 44, modeled after the ADA and structured to harmonize Puerto Rico law with the ADA's statutory provisions, protects against discrimination by any public or private institution that receives funding from the Commonwealth of Puerto Rico against persons suffering from disabilities. *See Torres–Alman v. Verizon Wireless,* 522 F.Supp.2d 367, 401 (D.P.R.2007) (internal citation omitted). Law 44 states specifically that those institutions are prohibited from taking action to "discriminate against persons with some type of physical or mental disability." P.R. Laws Ann., tit. 1, § 504. The elements required to satisfy a claim pursuant to Law 44 mirror those required to satisfy a claim pursuant to the ADA. *See Id.* Accordingly, the Court applies case law governing the application of ADA standards to the plaintiffs' claims under Law 44.

The ADA prohibits covered employers from discriminating against a qualified individual on the basis of disability in regards to the terms, conditions and privileges of employment. 42 U.S.C. § 12112(a). Defendants argue that they could not have discriminated against Rivera on the basis of her disability because they had no knowledge of it prior to her expulsion from the Program. Many courts have determined that a plaintiff cannot sustain a *prima facie* case of disability discrimination without showing that an

employer had actual or constructive knowledge of the plaintiff's disability. *See Hedberg v. Indiana Bell Telephone Co., Inc.,* 47 F.3d 928 (7th Cir.1995).[17]

■ Because the summary judgment stage has not yet been reached, and the more liberal pleading standards governing a motion to dismiss apply, the Court finds that the plaintiffs have alleged sufficient facts to show plausibly that the defendants may have known of Rivera's disability prior to her expulsion. Plaintiffs have alleged that Program representative Rodriguez called Concepcion (Rivera's mother) on January 23, 2007, informing her that Rivera had been expelled from the Program due to Rivera's erratic conduct. The plaintiffs contend that, during the period encompassing the evening of January 23 and the morning of January 24, 2007, Rivera was eventually discovered "disoriented and wandering aimlessly about the street in shorts and T-shirt at a temperature of 32 degrees" by local police in Alexandria, VA. On January 24, 2007, Rivera was diagnosed with bipolar disorder in the manic phase in a nearby psychiatric unit. On January 25, 2007, Concepcion and Viera (Rivera's step-father) contacted the defendants "who told them that [Rivera] had not been expelled for disciplinary problems or conduct, rather for her health condition." Oddly, the plaintiffs also allege that "the sudden expulsion was the trigger that plunged [Rivera] in the crisis," which contradicts other factual allegations showing that the defendants may have known about Rivera's health issues and expelled her because of them.

Because of these possible contradictions, the factual record as it now stands is confusing: plaintiffs allege that: (1) Concepcion learned of Rivera's expulsion on January 23, 2007, supposedly before any diagnosis was made; (2) On January 25, 2007, defendants told Concepcion and Viera that Rivera's expulsion was a result of Rivera's health condition; and (3) Rivera's expulsion caused her mental health crisis. (*See* Docket No. 10–3 at 3 and 4) Although a more developed factual record may reveal that the defendants' had insufficient knowledge to sustain a causal link between Rivera's expulsion and her alleged disability, the current record makes it plausible that defendants knew of Rivera's disability. The defendants' motion to dismiss the Law 44 claims on the basis that defendants' lacked knowledge of Rivera's condition is therefore **DENIED.**

Defendants also allege that plaintiffs cannot establish a *prima facie* case of discrimination because they failed to allege that Rivera's disability substantially affected a major life activity. For the purposes of the ADA, a disability is either: (1) a physical or mental impairment which substantially limits one or more of an individu-

---

**17.** There is some case law to indicate that constructive notice may be shown to prove notice in ADA cases. The case law, however, is not uniform nor is it entirely clear. *See, e.g., Morisky v. Broward County,* 80 F.3d 445, 447–49 (11th Cir.1996) (liability under the ADA requires actual or constructive notice of the disability); *Cordoba v. Dillard's, Inc.,* 419 F.3d 1169 (11th Cir.2005) (discussing the inconsistencies in case law regarding constructive knowledge theories); *Crandall v. Paralyzed Veterans of America,* 146 F.3d 894, 895 (D.C.Cir.1998) ("no reasonable factfinder could have found that [the employer] discriminated on the basis of [the employee's] disability, since it had neither actual nor constructive notice of his disability when it fired him").

Although constructive notice theory appears in several courts of appeals holdings in ADA cases, "the courts of appeals have overwhelmingly agreed that for this causal link to be shown the employer must have acted with an awareness of the disability itself, and not merely an awareness of some deficiency in the employee's performance that might be a product of an unknown disability." *Adams v. Rice,* 531 F.3d 936, 959 (D.C.Cir.2008)

al's major life activities; (2) a record of such an impairment; or (3) being regarded as having such an impairment. *See* 42 U.S.C. § 12102(2). The facts alleged in the amended complaint make it plausible both that Rivera actually suffered from an actual mental impairment that substantially limited one of her major life functions and that she was regarded as disabled by the defendants within the meaning of the ADA.

The analysis of whether a plaintiff has an actual disability within the meaning of the statute depends upon three factors: (1) whether the plaintiff suffered a physical or mental impairment; (2) whether a life activity limited by the impairment qualifies as major; and (3) whether the impairment substantially limited a major life activity. *Calero–Cerezo v. U.S. Dept. of Justice,* 355 F.3d 6, 20 (1st Cir.2004). The burden is on the plaintiff to establish these three elements. *Id.* The determination of whether a plaintiff is disabled under the ADA must be made on a case-by-case basis. *Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 198, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002).

Plaintiffs have pled facts establishing that Rivera suffered from a bipolar disorder, an actual mental impairment. According to the Equal Employment Opportunity Commission's regulations, a physical or mental impairment includes: "Any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities." 29 C.F.R. § 1630.2(h)(2). Plaintiffs have also made a *prima facie* showing that Rivera's bipolar disorder impacted at least two of Rivera's major life activities: working (participating successfully in the Program), and caring for herself. "For ADA purposes, the EEOC specifically acknowledges that both working and caring for oneself are major

life activities ..." *Navarro v. Pfizer Corp.,* 261 F.3d 90, 97 (1st Cir.2001) (citing EEOC regulations governing the definition of major life activities).

Finally, the plaintiffs pled facts showing that Rivera's bipolar disorder substantially limited her ability to perform the identified major life activities. The Equal Employment Opportunity Commission's regulations state that a substantially limited individual is:

> (i) Unable to perform a major life activity that the average person in the general population can perform; (ii) significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1).

Rivera allegedly was unable to participate further in the program due to her erratic behavior. Further, Rivera was allegedly unable to take care of herself: she was dressed inappropriately for cold weather, and was found wandering in a disoriented fashion outdoors without proper clothing. These facts establish that Rivera's ability to care for herself, in particular, was poor as compared to an average person in the general population.

Other factors this Court must consider in determining whether Rivera was substantially limited in a major life activity are (1) the nature and severity of the impairment, (2) the duration or expected duration of the Rivera's impairment, and (3) the permanent or long-term impact resulting from the impairment. 29 C.F.R. § 1630.2(j)(2)(ii)-(iii).

The defendants protest only that Rivera's condition did not substantially affect

a major life activity; they do not address any of these factors in particular. With regard to the first factor, the facts alleged in the amended complaint show both that Rivera's bipolar disorder, her impairment, was severe enough to produce erratic and self-injurious behavior, which resulted in her being placed in a psychiatric institution. With regard to the third factor, the facts also show that Rivera's impairment has had long-lasting impacts: following her stay in a psychiatric institution for nearly one month, Rivera has received long-term treatment to allow her condition to stabilize.

 the second factor, the temporality of Rivera's condition, defendants rightly point out that, according to the amended complaint itself, Rivera had "returned to her studies" and was "in the process of completing her Bachelor's degree." (Docket No. 12 at 7) The defendants' characterization of the plaintiffs' allegations, however, is incomplete and therefore misleading. Plaintiffs claim that Rivera "has continued under medical treatment, and her condition is stable" and that "ever since she was stabilized, on or around February 18, 2007, [Rivera] has been and continues being fully qualified to carry out the basic functions of the Internship Program …" (Docket No. 10–3 at 5) That Rivera's bipolar disorder has been treated, permitting her return to school and her stabilization, and will continue to be treated in the future does not remove her from the statutory definition of disability. *See Arnold v. United Parcel Serv., Inc.*, 136 F.3d 854, 859 (1st Cir.1998) ("Both the explicit language and the illustrative examples included in the ADA's legislative history make it abundantly clear that Congress intended the analysis of an 'impairment' and of the question whether it 'substantially limits a major life activity' to be made on the basis of the underlying (physical or mental) condition, without considering the ameliorative effects of medication, prostheses, or other mitigating measures.") (internal citations omitted).

 The First Circuit Court of Appeals interpreted the requirement that an impairment's impact must be permanent or long-term, as "encompass[ing] conditions that are potentially long-term, in that their duration is indefinite and unknowable, but not those that are brief or foreseeably temporary." *Guzman–Rosario v. United Parcel Service, Inc.*, 397 F.3d 6, 11 (1st Cir.2005). Because the duration of Rivera's mental condition remains indefinite and unknowable, the plaintiffs have established Rivera's impairment as durable and long-term.

Examining the current record in light of the factors used to determine whether a plaintiff has shown a substantial limitation on a major life activity, the Court finds that Rivera's bipolar disorder substantially limits her ability to care for herself. Plaintiffs have sufficiently alleged that Rivera suffers from a disability within the meaning of the ADA, and therefore met their burden under Rule 12(b)(6) of establishing a claim pursuant to Law 44 upon which relief may be granted. Defendants' motion to dismiss the Law 44 claim is accordingly **DENIED.**

## V. Whether defendants enjoy immunity from plaintiffs' tort claims

 The defendants confusingly argue that some or all of that them enjoy sovereign immunity with regard to the damages claims pursuant to Articles 1802 and 1803 of the Civil Code: the general negligence statute.[18] The heading of the defendants' sovereign immunity argument is: "The

18. Article 1802 of the Civil Code provides: "A person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage

Senate enjoys immunity from Plaintiffs' tort claims." (Docket No. 12 at 7) Yet the first sentence of the argument under that heading states: "The *Commonwealth* enjoys sovereign immunity and may not be sued without its prior consent." *Id.* (emphasis added). For the purpose of determining whether entities are immune from suit, the Commonwealth and the Senate (not to mention the other defendant, the Legislative Assembly, which joined the motion to dismiss without adding any additional analysis on this or any other issue) are not one and the same. The defendants' careless interchanging of these two entities in their argument is sloppy at best and legally misleading at worse.

Defendants go on to argue they are immune from suit because a local tort claims statute requires written notice of damages claims and sets a limit on liability. Specifically, the defendants claim "the statute authorizing damages against the Commonwealth requires written notice, in form and within terms therein stated, as jurisdictional prerequisite to establishing claim against Commonwealth to recover damages resulting from fault or negligence, unless there is just cause for its omission." (Docket No. 12 at 9) Defendants contend that no such notice was given by plaintiffs, that the plaintiffs failed to allege providing defendants with notice, and that the plaintiffs have offered no justification to excuse their failure to notify the defendants. The plaintiffs offer an inadequate response in their opposition to the motion to dismiss; all plaintiffs say on this matter is that "all of these arguments are untimely" because they require the Court to go beyond the merits of the allegations and defenses.

The Court hereby orders both parties to **SUBMIT MEMORANDA NO LATER THAN FEBRUARY 3, 2010** answering whether the Article 1802 and Article 1803 claims should be dismissed on sovereign immunity grounds.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** the defendants' motion to dismiss the ADA Title II and Rehabilitation claim for failure to exhaust administrative remedies; **GRANTS** the motion to dismiss the section 1983 claims as against the Commonwealth, the Legislative Assembly, and McClintock and Aponte in their official capacities; finds that no section 1981 claim was properly pled in the amended complaint; **DENIES** dismissal of the plaintiffs' claim pursuant to Section 1, Article II of the Puerto Rico Constitution; **DENIES** dismissal of the Law 44 claims; and **DISMISSES** the Article 1802 and Article 1803 claims against the Commonwealth of Puerto Rico. The Court orders plaintiffs to **show cause, no later than February 3, 2010** whether their claims against the Program should not be dismissed for failure to serve process within 120 days. Fed. R.Civ.P. 4(m). The Court also orders both parties to **SUBMIT SIMULTANEOUS MEMORANDA NO LATER THAN FEBRUARY 3, 2010** addressing only whether: (1) all defendants have sovereign immunity from the Title II ADA and Rehabilitation claims; and (2) whether the Article 1802 and Article 1803 claims should be dismissed on sovereign immunity grounds. Defendant Rodriguez remains in default.

**IT IS SO ORDERED.**

---

so done." P.R.Laws Ann. tit. 31, § 5141. Article 1803 extends § 5141 to the Commonwealth: "The Commonwealth is liable in this sense under the same circumstances and conditions as those under which a private citizen would be liable." *Id.* § 5142.